IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID D. ADAMS, <u>et al.</u>            :
                                        :
v.                                      :   Civil No. WMN-00-2873
                                        :
HOUSING AUTHORITY OF                    :
     BALTIMORE CITY, <u>et al.</u>        :


<u>MEMORANDUM</u>

Before the Court is Defendants' Motion for Summary
Judgment.  Paper No. 54.  The motion is fully briefed.  Upon a
review of the motion and the applicable case law, the Court
determines that no hearing is necessary (Local Rule 105.6) and
that the motion will be granted in part and denied in part.


**I. FACTUAL AND PROCEDURAL BACKGROUND**

This is an action for overtime compensation.  Plaintiffs
are/were members of Defendant Housing Authority of Baltimore
City Police Force (HABCPF).[1]  HABCPF is a division of the

---

[1] This case was filed in September of 2000 and, after two
amended complaints, presented the claims of 62 individual
HABCPF employees.  On August 8, 2002, this Court dismissed
five of the plaintiffs on the basis of their complete failure
to respond to discovery.  In a report and recommendation
issued October 9, 2002, Paper No. 71, Magistrate Judge James
Bredar has recommended that this Court dismiss the claims of
two additional plaintiffs, Cheryl Blue and Cynthia Potter, on
the ground that they too have failed to properly respond to
discovery.  Plaintiffs have filed no objections to Magistrate
Judge Bredar's report and recommendation and it will be
granted, for the reasons stated therein.  Thus, the claims of

Housing Authority of Baltimore City (HABC), an entity
established by the State of Maryland to provide low cost
housing for the residents of Baltimore.  HABC police officers'
duties include monitoring persons and vehicles entering and
leaving HABC property, patrolling HABC property, controlling
traffic, investigating crimes committed on HABC property and
making arrests within their jurisdiction.  That jurisdiction
is generally limited to HABC property.  HABCPF is a public law
enforcement agency as described in the federal Fair Labor
Standards Act, 29 U.S.C. §§ 201, et seq. (FLSA).  29 U.S.C. §
207(k).

Plaintiffs' overtime claims relate to two main issues: 1)
the lack of compensation for meal breaks, and 2) the mandatory
attendance at pre-shift daily roll calls.  During the time
relevant to this action, Plaintiffs were generally assigned to
five, eight hour shifts each week.  Each shift included a
forty minute meal break, thirty minutes of which was non-
compensable.  Plaintiffs maintain that they should be paid for
their entire meal breaks as they seldom are actually able to
take those breaks, and on those occasions that they are, they
are frequently interrupted or, at a minimum, must remain in a
"state of readiness."  In addition, prior to March 26, 2001,

---

55 plaintiffs remain pending.

2

uniformed patrol officers and their supervisors were required
to attend 15 minute roll calls that took place prior to each
shift.[2]  Plaintiffs maintain that this time also should have
been compensated.

     In Defendants' view, Plaintiffs work a 37.5 hour week.
In Plaintiffs' view, however, with the inclusion of the pre-
shift roll calls and the full meal break, they believe that
they should be compensated for 8.25 hours per day, or 41.25
hours per week.  Thus, Plaintiffs contend that HABC has
unlawfully failed to pay them 1.25 hours of overtime each
week.  They bring this action pursuant to the FLSA and the
Maryland Wage and Hour Law, Md. Code Ann., Labor and Empl. §
3-401, et seq.

     In their motion for summary judgment, Defendants argue
that under an exemption in the FLSA applicable to law
enforcement agencies, 29 U.S.C. § 207(k), overtime pay is only
required for hours worked over 43 hours per week.  Defendants
assert that this same exemption should apply to Plaintiffs'
claim under the Maryland Wage and Hour Law.  In addition to
these legal arguments, Defendants contend that the following
facts are undisputed and entitle them to summary judgment:

_____

     [2] HABCPF discontinued the practice of pre-shift roll calls as of
March 26, 2001.

1) several Plaintiffs were employed in supervisory roles that render them exempt employees for the purposes of overtime compensation.

2) during the relevant time frame, twenty one of the named Plaintiffs had assignments that did not require attendance of pre-shift roll calls; and

3) the restrictions on meal breaks, and the frequency of interruptions, are insufficient under the relevant case law to render those breaks compensable.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation.  Anderson, 477 U.S. at 248.

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's

4

case which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When considering the motion, the court assumes that all of the non-moving party's evidence is worthy of belief and justifiable inferences are drawn in favor of the non-moving party. Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the movant demonstrates that there is no genuine issue of material fact and that she is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. Celotex, 477 U.S. at 324. The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. Instead, the evidentiary materials must show facts from which the finder of fact could reasonably find for the non-moving party. Anderson, 477 U.S. at 252. At the summary judgment phase, it is not appropriate for the court to make credibility determinations, weigh the evidence, or draw inferences from the facts which are adverse to the nonmoving party; these are jury functions. Anderson, 477 U.S. at 255.

## III. DISCUSSION

### A. Section 7(k) Exemption

The two central protections of the FLSA relate to minimum wage

and maximum hour violations.  As to the latter, § 7 of the FLSA provides that work done in excess of forty hours must be compensated at a rate at least one-and-a-half times the regular work rate.  See 29 U.S.C. §§ 207(a)(1).  Section 7(k), however, offers a limited exemption from the overtime limit for public employers of law enforcement personnel or firefighters.  See id., §§ 207(k).  This "7(k) exemption" increases the overtime limit slightly, and it gives the employer greater flexibility to select the work period over which the overtime limit will be calculated.  See 29 C.F.R. §§ 553.230 (stating that for employees engaged in law enforcement activities who have a work period of at least 7 but less than 28 consecutive days, no overtime compensation is required under section 7(k) until the number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the work period bears to 28).  For example, where the employer selects a seven-day work period, overtime will not begin to accrue until after forty-three hours of work within any seven day work period.  See id.

Defendants bear the burden of showing their qualifications for a section 7(k) exemption.  Adair v. City of Kirkland 185 F.3d 1055, 1060 (9th Cir. 1999).  "Generally, the employer must show that it established a 7(k) work period and that the 7(k) work period was "'regularly recurring.'"  Id.  "Whether an employer meets this burden is normally a question of fact."  Id.

6

Defendants assert that HABCPF has unquestionably established a seven day work period.  The HABC Manual of Policy and Procedure provides that "[t]he regular workweek consists of five (5) consecutive eight (8) hour days which include a daily lunch period within the seven (7) day workweek as defined by the employer." Policy 25-30-00, Defs. Exh. 1.  The Manual further provides that "[t]he workweek for the Housing Authority begins at 12:01 A.M. Saturday and ends at 12 midnight on the following Friday. . . . Full-time salary-graded employees will normally work five (5) consecutive eight (8) hour days."  Policy 25-30-10, Defs. Exh. 1.[3]

Consistent with HABC policies, the HABCPF adopted the identical policy.  HABCPF Directive 96-28 states, "[t]he workweek for the Housing Authority begins at 0001 hours Saturday and ends at 2400 hours on the following Friday.  Members of the Housing Authority of Baltimore City Police Force who are salary-graded and contractual employees will normally work 5 consecutive eight hour days."  Defs. Exh. 2.  Defendant Hezekiah Bunch has submitted an affidavit in which he states that HABCPF has consistently implemented these policies. Bunch Aff. at ¶ 3.  In addition, he states that HABCPF computes overtime pay based upon the hours worked in these seven day work

_____

[3]  This same Policy also provides that "[i]ncluded in each eight (8) hour day is a forty (40) minute lunch period.  Payroll calculations, however, will be made on the basis of seven and one half (7 ½) hours of work per day."

periods.  Id.  It is noted that Plaintiffs cite Policy 25-30-10 in their complaint and appear to acknowledge in that pleading that HABCPF adheres to the seven day work period.  See Second Amended Complaint at ¶¶ 10, 11.

Notwithstanding that acknowledgment, Plaintiffs now raise several challenges to Defendants' entitlement to a 7(k) exemption. Preliminarily, Plaintiffs assert that, while Police Directive 96-28 establishes a seven day work period, many Plaintiffs claim that they are scheduled for other work cycles, some, "six days on followed by two days off," and others, "unusual and irregular hours."  Opp. at 7. Defendants readily concede that, due to labor shortages and other needs of the force, employees may be required to work something other than the normal five day on, two day off, cycle.  Reply at 11. Defendants emphasize, however, that Plaintiffs do not dispute that HABCPF has consistently employed the seven day work period for the purpose of calculating overtime pay.  The time and frequency of days off within an established work period is irrelevant.  See 29 C.F.R. § 553.224 ("Once the beginning and ending time of an employee's work period is established, however, it remains fixed regardless of how many hours are worked within that period.").

Plaintiffs' primary challenge to HABCPF's entitlement to the 7(k) exemption is their claim that HABCPF waived its protection by enacting a policy and practice of paying its employees overtime for

8

any hours worked over 40 hours in any seven day work period.  Opp. at

8-9.  Courts have consistently rejected this very argument, however.

See, e.g., Local 889 v. State of Louisiana, 145 F.3d 280 (5th Cir.

1998); Birdwell v. City of Gadsden, Alabama, 970 F.2d 802 (11th Cir.

1992).  In Local 889, the State contended that it had adopted a 14

day work period for its prison guards which, under the 7(k)

exemption, would have entitled the guards to overtime only after

working 86 hours in a 14 day period.  Nevertheless, the State paid

its guards overtime for any hours worked over 80 hours during a 14

day period.  Plaintiff argued that this practice resulted in a

"forfeiture of the benefits of section 207(k)."

     In rejecting this argument, the Fifth Circuit opined,

"[t]he State is not to be punished for doing more than the statute

requires.  Although we are persuaded that section 207(k) is the

standard by which overtime is to be calculated for employees engaged

in law enforcement activities, the decision by the State to pay

overtime sooner than mandated is not to be taken as a forfeiture or

rejection of the privilege granted to state and local authorities by

the Congress in section 207(k)."  Local 889, 145 F.3d at 284.[4]

     The Court finds that HABCPF is entitled to the 7(k) exemption.

_____

     [4] Plaintiffs cite Anderson v. City of Wood Dale, 2001 WL 477158
(N.D. Ill. 2001), in support of its waiver argument.  The court in
Anderson, however, never reached this argument as the parties settled
the FLSA claim before the court addressed their cross motions for
summary judgment.  Id. at *3.

Thus, even if the Court should find for Plaintiffs on both the meal break and pre-shift roll call issues, the additional hours would still not bring Plaintiffs above the 43 hour overtime threshold. Accordingly, the Court finds that Defendants are entitled to judgment as to each of the Plaintiffs' FLSA claims.[5]

### B. Maryland Wage and Hour Law

Plaintiffs also assert a claim for overtime pay under the provisions of the Maryland Wage and Hour Law. Md. Code Ann., Labor & Empl. §§ 3-401, et seq. Under §§ 3-415 and 3-420, Maryland employers are required to pay an overtime wage of 1.5 times the usual hourly wage for each hour over 40 hours that an employee works during one workweek. Maryland's Wage and Hour Law, like its federal counterpart, recognizes exceptions for certain employees. The exceptions listed in the Maryland statute include, farmworkers, employees of bowling establishments and employees of infirmaries. Id. § 3-420. There is no exception provided, however, for those employed in law enforcement. Defendants would have this Court read the federal 7(k) exception into the Maryland Code. The Court finds no basis to do so.

---

[5] It appears from the Second Amended Complaint and Plaintiffs' other pleadings that the only relief sought by Plaintiffs under the FLSA is for overtime pay under § 207. It would appear that, under the circumstances presented here, there would be no other basis for recovery of damages under the FLSA. See Monahan v. County of Chesterfield, 95 F.3d 1265 (4th Cir. 1996).

The "savings clause" of the FLSA, provides in relevant part that:

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter....

29 U.S.C. § 218(a).  Courts have consistently interpreted this clause as evidence of Congress' intent not to preempt state wage and hour laws that might be more generous than the FLSA:

> This section expressly contemplates that workers covered by state law as well as FLSA shall have any additional benefits provided by the state law – higher minimum wages; or lower maximum work week.  By necessary implication it permits state laws to operate even as to workers exempt from FLSA.

Williams v. W.M.A. Transit Co., 472 F.2d 1258, 1261 (D.C. Cir. 1972).


In light of this clearly expressed policy against preemption of state wage and hour laws, the Court will not lightly read into the Maryland statute an exemption that the Maryland General Assembly did not include.  This is particularly appropriate given the General Assembly's inclusion of exceptions for other types of employees.  "Where a statute expressly provides for certain exclusions, others should not be inserted."  Pennsylvania Nat'l Mut. Cas. Ins. Co. v.

11

Gartelman, 288 Md. 151, 156 (1980).

Thus, depending upon the resolution of the factual issues related to Plaintiffs' meal breaks and pre-shift roll calls, Plaintiffs may have valid claims for overtime under the Maryland statute.

**C. Exemptions for Supervisory and Executive Personnel**.

Under both the FLSA and the Maryland Wage and Hour Laws, employees employed in bona fide executive, administrative, or professional capacities are exempt from the overtime requirements of the respective acts. See 29 U.S.C. § 213(a) and Md. Code Ann., Labor & Empl. § 3-403(a)(1). In his affidavit, Chief Bunch avers that six of the Plaintiffs remaining in this action "were classified exempt, salaried employees, earning much more than $250.00 per week: all held supervisory control and command positions with the HABC Police Force; all of them performed executive, decision making functions; [and] all of them customarily and regularly directs, monitors, supervises and evaluates the work and performance of scores of HABC Police Force employees." Bunch Aff. at ¶ 5. In a supplemental affidavit, Chief Bunch elaborates on these supervisory and management duties and also clarifies that each of these individuals "expends more than 50% of his/her time performing management/administrative duties for the HABC Police Force." Bunch Supp. Aff. at ¶ 4. These employees are: Sergeant Mary Baumeister, Sergeant Marvin Bossard, Sergeant John

12

Fitch, Lieutenant Joseph Gorsuch, Sergeant Leonard Tennessee, and Sergeant Kevin Warren.  Id.[6]  On this basis, Defendants assert that these individuals are not entitled to overtime compensation under the federal or state statutes.

Plaintiffs first challenge Defendants' invocation of this exemption on the ground that Defendants failed to raise it as an affirmative defense in their answer.  See Opp. at 4.  Plaintiffs state that, "[p]ursuant to Federal Rule of Civil Procedure 12(b), 'It is indisputably the general rule that a party's failure to raise an affirmative defense in the appropriate pleading results in waiver.'" Id.  The candor of Plaintiffs' counsel in presenting an accurate account of the prevailing law fall woefully short.  The Court's independent research discloses that the quote comes from the Fourth Circuit's opinion in Brinkley v. Harbour Recreation Club, 180 F.3d 598 (4th Cir. 1999), and the entire sentence from which it was extracted reads as follows:  "Although it is indisputably the general rule that a party's failure to raise an affirmative defense in the appropriate pleading results in waiver, see 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1278 (1990), there is ample authority in this Circuit for the proposition that

---

[6] In addition, the following Plaintiffs were promoted to the rank of Sergeant in 1998 and thus fall under the exemption for at least a portion of the time relevant to this suit: Allistar Dais, Steven Evans, Gregory House, and Delford Jimmerson.

<u>absent unfair surprise or prejudice to the plaintiff, a defendant's</u> <u>affirmative defense is not waived when it is first raised in a pre-</u> <u>trial dispositive motion</u>." <u>Id.</u> at 612 (emphasis added to the portion omitted by Plaintiffs); <u>see also</u> <u>Abel v. Knickerbocker Realty Co.</u> 846 F.Supp. 445, 449 (D. Md. 1994) ("As this Court has held before, absent prejudice to the opposing party, an affirmative defense may be raised at summary judgment even though not specifically pled.", <u>citing</u> <u>EEOC v. Peterson, Howell & Heather, Inc.</u>, 702 F.Supp. 1213, 1217 n. 6 (D. Md. 1989)).

The Court finds that this defense is not waived.[7]  The only prejudice that Plaintiffs allude to is that they "have to spend additional time preparing arguments against this defense it did not contemplate, including information for affidavits from the sergeants and lieutenants." Opp. at 5.  This is plainly insufficient as this would always be the case when a defense is raised for the first time in a motion for summary judgment.  As Defendants also note, the fact that these employees were exempt employees is a fact of which they were well aware, long before this litigation was filed.  Since October 1998, Plaintiffs' payroll sheets clearly identified each

---

[7] Defendants argue that the exemption under § 213(a) was not waived because it is not one of the specific defenses enumerated in Federal Rule 8(c).  Defendants' argument ignores the catch-all clause in Rule 8(c), which requires a party to include in its answer "any other matter constituting an avoidance or affirmative defense." Under appropriate circumstances not found here, this exemption could be subject to waiver.

employee as exempt or non-exempt, and they have received compensatory time for overtime hours, as opposed to the overtime pay received by non-exempt employees.  See Reply at 3, and exhibits cited therein.

In attacking the merits of Defendants' assertion of this executive exemption, Plaintiffs assert that the affidavits of the sergeants and lieutenants "clearly dispute" the affidavit of Chief Bunch.  Opp. at 12.  The affidavits, Plaintiffs claim, state that these individuals "patrol the streets," and "investigate crimes" and that "these [non-managerial] duties constitute the majority of their time."  Id.  Notwithstanding Plaintiffs' representations concerning these purported affidavits, no affidavits from these individuals were actually submitted with the opposition.[8]

The Court finds Chief Bunch's unchallenged affidavits more than sufficient to support Defendants' claim that HABCPF sergeants and lieutenants are exempt from overtime compensation under both federal and state statutes.  Accordingly, the claims of Plaintiffs Sergeant Mary Baumeister, Sergeant Marvin Bossard, Sergeant John Fitch, Lieutenant Joseph Gorsuch, Sergeant Leonard Tennessee, and Sergeant Kevin Warren will be dismissed.

---

[8] During the two months following the filing of Plaintiffs' Opposition, affidavits from various Plaintiffs have trickled into the Court.  Affidavits were filed by Plaintiffs Baumeister, Gorsuch and Warren.  These affidavits, however, do not contain the representations alluded to in the Opposition.

15

**D. Pre-Shift Roll Calls**

Defendants do not dispute that the fifteen minutes spent by some of the Plaintiffs in pre-shift roll calls constitutes work time. See Mot. at 5 n.2. Defendants do argue, however, that as many as 17 of the remaining Plaintiffs[9] were never required to attend pre-shift roll calls during the relevant time period[10] because of the nature of their duty assignments. Defendants assert that the only members of the HABCPF that attended pre-shift roll calls were those serving as uniformed patrol officers and their supervisors. According to Defendants, these 17 individuals did not serve in the Patrol Unit during the relevant time period. Defendants support these assertions with the affidavit of Chief Bunch. Bunch Aff. at ¶¶ 9-11.

With the exception of Plaintiff Jerry McClairn, each of these 17 Plaintiffs has answered Defendants' Interrogatory #1 in such a

---

[9] These Plaintiffs are: Alvin Barnes, Trevor Britt, Derek Brooks, Ronald Carrigan,, John Goods, Anthony Grant, Roderick Jackson, Rudolph Jews, Earl Carter Jones, Michael Lynch, Jerry McClairn, Thomas Michael, Gregory Missouri, Dana Pinnock, Bruce Wallace, Sandra Wallace, and Arthur Young. Defendants also place four other Plaintiffs in this category, three that the Court will dismiss under the supervisor exemption: Mary Baumeister, John Fitch, and Leonard Tennessee, and one that the Court will dismiss for failure to provide discovery, Cynthia Potter.

[10] Plaintiffs filed this suit on September 23, 2000. The parties appear to agree that the farthest back that Plaintiffs can recover unpaid wages is three years from the date of that filing. It also appears uncontested that as of March 26, 2001, HABCPF completely discontinued the practice of requiring attendance at pre-shift roll calls. Thus the relevant time period for claims based upon pre-shift roll call attendance is September 1997 to March 26, 2001.

16

manner as to a least raise a genuine issue of material fact as to whether they attended pre-shift roll calls during the relevant time period.[11]   Most Plaintiffs simply stated that the were "subject to daily pre-shift roll call throughout the duration of [their] employment."  See, e.g., Pls. Exh. 59F, Interrog. Ans. of Sandra Wallace.  A few Plaintiffs expressed their attendance of pre-shift roll call more affirmatively.  Plaintiff Grant stated, "While working as a patrol officer from 1998-2000, Plaintiff was required to attend roll call."  Pls. Exh. 25F, Interrog. Answers of Anthony Grant.  In addition to Grant, others of these 17 Plaintiffs stated that they worked a patrol officers during the relevant time.  See, e.g., Pls. Exh. 60F, Interrog. Answers of Arthur Young ("Plaintiff was subject to daily pre-shift roll call throughout the duration of his employment, as he has only held the position of patrol officer.")  In addition to these interrogatory answers, many of the Plaintiffs also submitted affidavits stating that "[u]ntil March 26, 2001 I reported at least fifteen minutes before the start of my duty to attend pre-shift roll call and other pre-shift duties including vehicle and equipment inspections."  See Aff. of Dana Pinnock.

    In their reply memorandum, Defendants criticize the affidavits

---

[11] Plaintiffs did not submit the interrogatory answers for Plaintiff McClairn.  Defendants did, however, and in those answers McClairn stated, "because of his position as Quartermaster, Plaintiff was not required to attend roll call."  Defs. Exh. V.

submitted by Plaintiffs as "transparently clumsy effort[s] to defeat Defendants' request to dismiss" these Plaintiffs.  Reply at 14. Defendants note, for example, that Plaintiff Goods, after declaring that he worked as a patrol officer from August 1992 through August 1993 and as an Agent in the Tactical Unit from August 1993 through May 2001, goes on to state that "[f]or each of these assignments I attended roll call every day."  Pls. Exh. 24(d).  Defendants highlight the fact that Plaintiff Goods did not state that he attended pre-shift roll call every day.

The Court is also somewhat suspicious of, and frankly concerned about, the manner in which Plaintiffs have couched their statements, both in their affidavits and in their interrogatory answers.  When Plaintiffs state in their interrogatory answers that they were "subject to daily pre-shift roll call throughout the duration of [their] employment," the Court interprets this statement as an affirmation that they actually attended pre-shift roll call each day. That is clearly the meaning that Plaintiffs intend the Court to attribute to that phrase, given the manner in which Plaintiffs have cited these answers in their pleadings.  See Opp. at 14-15.

Plaintiffs' counsel's misleading quotation of case law, discussed above, only heightens the Court's concern.  Should it turn out that this litigation has been prolonged as to certain Plaintiffs through Plaintiffs' or Plaintiffs' counsel's duplicity, the Court

18

will certainly entertain appropriate motions for sanctions.  In the meantime, the Court will not dismiss these Plaintiffs, with the exception of Jerry McClairn, who has clearly stated that he did not attend pre-shift roll calls.

The Court should also note in this context, that Plaintiffs in their opposition appear to attempt to significantly expand the scope of their claims in this action. In the complaint, Plaintiffs limited their "pre-shift" allegations to those related to the attendance of mandatory roll call. <u>See</u> Second Amended Complaint at ¶¶ 17, 18.  This litigation proceeded on the understanding that, in addition to uncompensated meal breaks, attendance at pre-shift roll calls was the basis of Plaintiffs' overtime claims.  In their opposition, however, Plaintiffs raise for the first time the issue of "other pre-shift duties that were compensable."  Opp. at 14.[12]  The issue of other pre-shift duties was not in the complaint and Plaintiffs will not be permitted to inject this new issue into this litigation at this late date.

------

[12] Plaintiffs state in their opposition that "all of the individuals [Defendants] claim did not attend roll call answer interrogatory number one by stating that they either attended roll call or other pre-shift duties."  Opp. at 14.  Contrary to Plaintiffs' representation, the answers to interrogatory one of these Plaintiffs do not make any reference to "other pre-shift duties."

**E. Meal Breaks**

As to this issue as well, the Court finds that the record presents genuine issues of material fact precluding the entry of summary judgment.

Chief Bunch paints the picture of all HABCPF officers enjoying relaxed and un-interrupted 40 minute meal breaks each day:

> During the forty minute daily meal period, all HABCPF officers are free to leave their assigned work area, (post, or patrol area), eat wherever they wish, and they are not restricted to any particular geographic area during their meal breaks. . . . . [T]he vast majority of HABCPF officers, including patrol officers, drive to various eating establishments in and around the City of Baltimore during their meal breaks. All members of the HABCPF are free to use their meal breaks to attend to personal errands and to use their allotted forty minutes of time as they wish.  Officers are not required to remain in uniform during meal breaks. . . .  I have first hand knowledge that many of our officers do frequently remove part of their uniforms while they are on meal breaks.
>
> . . .
>
> [I]n the event an officer is called to an emergency during his/her meal break, the officer is to return to his/her post/patrol area and respond to the emergency.  After the emergency call is completed the officer is to resume his meal break and utilize his entire forty minute allotment for the meal break.
> In reality and practice, HABCPF Police Officers are not called back from meal

> breaks to respond to emergencies.  I cannot
> recall even one single incident since I
> became Chief in 1993, in which an officer
> has been called back from his/her post
> during a meal break to respond to an
> emergency.  Moreover, I am not even aware
> of one instance in which an HABCPF Police
> Officer has been requested or directed to
> curtail or forego a meal break due to any
> work related task.

Bunch Aff. at ¶¶ 12, 16, 17.

Plaintiffs paint a very different picture.  In their answers to interrogatories, many of the Plaintiff state that they were unable to take <u>any</u> meal breaks.  <u>See</u>, <u>e.g.</u>, Plaintiff Goods Interrog. Answer 12, Pls. Exh 24F.  Plaintiff Goods explains further that,

> Plaintiff was unable to take a lunch
> break that was not interrupted by an
> emergency or non-emergency call.  Most
> interruptions were for calls from the
> mayor's office regarding drugs, violent
> crimes, fraud, theft.  Interruptions
> occurred several times a week.  It was
> difficult to ever get a complete meal break
> as calls continually came in which
> Plaintiff was required to respond to, even
> if he reported that he was taking meal time
> prior to the call coming in.  Most
> interruptions lasted throughout the
> duration of the shift.  Plaintiff did not
> always have an opportunity to make up
> interrupted meals time because he could
> only attempt to do so when there were no
> calls to respond to.  It was a rare
> circumstance not to have a call to respond
> to.

<u>Id.</u> at Answer 15.  Most Plaintiffs responded similarly.

Like the challenge to Plaintiffs' attempt to include
claims related to "other pre-shift duties," Defendants argue
that Plaintiffs' claim that they never obtain any meal breaks
at all was untimely raised.  Reply at 19.  Defendants contend
that Plaintiffs' claim should be limited to the claim that
"meal breaks should be compensable because of the limitations
imposed upon them during meal breaks and because of the
frequency and nature of interruptions in their meal breaks."
Id. at 18.  The Court disagrees.  Plaintiffs' current
position varies, if at all, only as to degree of interruptions
that they experienced, not as to the nature of those
interruptions.  Plaintiffs also alerted Defendants through
discovery of their contention that meal breaks were
interrupted to such a degree that they were essentially
deprived of any meal break.[13]

---

[13] Also related to the issue of meal breaks is a "Motion for
Relief From Order," Paper No. 75, filed by Plaintiffs.  This motion
arises out of an ongoing dispute regarding Plaintiffs' responses to
document requests.  Briefly stated, the dispute is as follows.
Defendants take the position that Plaintiffs had an obligation to
copy and produce to them all Daily Activity Sheet (run sheets) which
reflected a meal time interruption.  Plaintiffs took the position
that all of the run sheets are relevant to the issue of Plaintiffs'
ability, or inability, to take a lunch break.  Plaintiffs maintain
that they were not required to duplicate and re-produce to Defendants
documents that were originally produced by Defendants to Plaintiffs.
The order from which Plaintiffs seek relief is part of a letter order
issued by Magistrate Judge Bredar on October 9, 2002, in which he
instructed Plaintiffs to produce specific response and documents upon
which they intend to use to support their claims.

Defendants also contend that Plaintiffs' current claim that they are unable to take meal breaks is directly contradicted by Plaintiffs' identification in their interrogatory answers of eating establishments that they frequent during their meal breaks.  The Court notes that, of the "eating establishments" identified by Plaintiffs, most are fast food establishments or carryouts.  Many of the Plaintiffs listed "7-11" as one of the eating establishment which they frequented.  The Court finds no inherent contradiction in Plaintiffs' various statements regarding the availability of meal breaks.

## IV.  CONCLUSION

Because the Court finds that exemption 7(k) of the FLSA is applicable to Plaintiffs, Plaintiffs' FLSA claims will be dismissed.  In addition, all claims of Plaintiffs Sergeant Mary Baumeister, Sergeant Marvin Bossard, Sergeant John Fitch, Lieutenant Joseph Gorsuch, Sergeant Leonard Tennessee, Sergeant Kevin Warren, and Jerry McClairn will be dismissed.  Defendants' motion for

---

The Court is going to grant Plaintiffs' Motion for Relief from Order.  With the opposition, Plaintiffs have now produced the documents in question.  As stated in the text above, the Court also believes that Plaintiffs sufficiently alerted Defendants as to the nature and basis for their claims.  Furthermore, Plaintiffs' argument that all of the run sheets were relevant, and that it was unnecessary to re-copy and re-produce all of those document to Defendants is a defensible position.

summary judgment as to the Maryland Wage and Hour Law claims
of the remaining Plaintiffs will be denied.  A separate order
will issue.


                                        /s/
                              _____
                              William M. Nickerson
                              Senior United States District Judge

Dated: March 31, 2003